

**U.S. Department of Justice**

*United States Attorney's Office*
*Eastern District of Louisiana*

---

*Emily K. Greenfield*
*Assistant United States Attorney*

*Poydras Center*
*650 Poydras Street, 16th Floor*
*New Orleans, Louisiana 70130*

*Telephone: (504) 680-3024*
*Facsimile: (504) 589-2027*

November 23, 2015



RECEIVED
JAN 06 2016
Judge Ivan L.R. Lemelle
Section B

William Michael
Mayer Brown LLP
71 South Wacker Drive
Chicago IL 60606

Re:   **United States v. Energy Resource Technology GOM, LLC**
      **Criminal Docket Number** 15-281 "B"

Dear Mr. Michael:

In compliance with the holding of Bryan v. United States, 492 F.2d 775 (1974) and with Rule 11 (c)(1)(C) of the Federal Rules of Criminal Procedure, the government wishes to acknowledge the following agreement which was reached between the Government and Energy Resource Technology GOM, LLC (hereinafter the "Company" or "defendant"), the defendant in the above-captioned proceeding. As the Company's counsel, you have reviewed the terms of this agreement and have been advised by the Company that it fully understands the terms of this agreement. The Company, by written board resolution attached hereto, has authorized you to enter into this plea agreement, on the Company's behalf.

The Company understands that the Government intends to file a Bill of Information charging the Company, by and through its agents and employees who were acting within the scope of their agency and employment and for the intended benefit of the Company, with two counts of violating regulations under the Outer Continental Shelf Lands Act. Count One will charge the Company for knowingly and willfully conducting hot work within 10 feet of a well bay that contained a flowing well. Count Two will charge the Company with knowingly and willfully failing to conduct a proper blowout preventer test. Counts One and Two are in violation of Title 43, United States Code, Section 1350(c)(1). Count Three will charge the Company with knowingly tampering with a monitoring method under the Clean Water Act in violation of Title 33, United States Code, Section 1319(c)(4). Count Four will charge the Company with knowingly discharging a pollutant into waters of the United States without a permit in violation of Title 33, United States Code, Section 1319(c)(2)(A). The Company agrees to waive its right to grand jury indictment.

1

The Company and government agree and stipulate that the Eastern District of Louisiana is an appropriate venue for entry of a plea to the Bill of Information charging said violations.

The Company understands that the maximum penalty it may face for each of the four felonies listed above is $500,000.00 or the greater of twice the gross gain to the defendant or twice the gross loss to any person under Title 18, United States Code, Section 3571.

To the extent any restitution is ordered under Title 18, United States Code, Section 3663 the Company agrees that it will be non-dischargeable in any bankruptcy proceeding and that the Company will not seek or cause to be sought a discharge or a finding of dischargeability as to the restitution obligation. The parties do not believe that restitution is applicable in this matter.

Further, the Company understands that a mandatory special assessment fee of $400.00 shall be imposed for each of the Counts under the provisions of Title 18, United States Code, Section 3013. These special assessments must be paid on the date of sentencing. Failure to pay the special assessments may result in the plea agreement being void.

Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, and the agreement made between the Government and the Company, the Government and the Company agree and stipulate to the following plea and sentence applicable to this case:

(1) The Company shall plead guilty to the Bill of Information charging it with four felony offenses as described above. The facts constituting these violations shall be more thoroughly described in a mutually acceptable Factual Basis submitted herewith;

(2) In exchange for the Company's guilty plea, the Government agrees that it will not bring any other charges against the Company arising from or related to any and all conduct that occurred in the Eastern District of Louisiana that was revealed by the investigation of the overboard water discharge of the Company's production facilities in the Gulf of Mexico, specifically SS 225, SS 223, SS 224, SS 222, HP 1/GC 237, SMI 107, WC 215, EC 346, EC 381, EI 302, ST 63, SMI 130, VR 331, VR 171, VR 195, HI 557, and WC 170, for the time period November 27, 2012 through July 1, 2014. In addition, the Eastern District of Louisiana agrees that it will not bring any other charges against the Company arising from any other conduct that is presently known by the United States Attorney's Office for the Eastern District of Louisiana. This plea agreement does not bind any other federal, state, or local prosecuting authority, except as set forth in paragraph 3 below.

(3) The United States Attorney's Office for the Southern District of Texas agrees that this plea agreement is binding on the United States Attorney's Office for the Southern District of Texas only for offenses related to produced water sampling and GMG 290000 Section I.B.4.a permit violations. The United States Attorney's Office for the Western District of Louisiana agrees that this plea agreement is binding on the United States Attorney's Office for the Western District of Louisiana and the Company only for offenses related to produced water sampling and GMG 290000 Section I.B4.a permit violations and for the offenses related to the knowing discharge violation involving platform VR195 in June 2015, and the Western District of Louisiana reserves the right to bring criminal charges

against any other non-Talos or non-ERT affiliates or individuals related to discharge violations involving VR195 in June 2015.

(4) It is understood that nothing within this specific agreement shall be construed to release the defendant from any possible related or consequential civil or administrative liability including administrative sanctions.

(5) The Company further agrees to pay a total monetary penalty of $4,200,000.00. The Company agrees that $100,000.00 of the monetary penalty shall be paid as an organizational community service payment to the Southern Environmental Enforcement Network and $100,000.00 shall be paid to the National Marine Sanctuary pursuant to §8B1.3 of the Federal Sentencing Guidelines and in furtherance of satisfying the sentencing principles provided for under 18 U.S.C. § 3553. Because the community service payment is designated as community service by an organization, the Company agrees that it will not seek any reduction in its tax obligations as a result of the payment. In addition, since the payment constitutes community service, the Company will not characterize, publicize, or refer to the payment as a voluntary donation or contribution. The Company will further not capitalize into inventory or take as a tax deduction, in the United States or elsewhere, any portion of the monetary payments made pursuant to this plea agreement;

(6) The Company agrees to pay the total monetary penalty on the day of sentencing.

(7) As set forth above, the Company must pay a total special assessment of $1,600.00 on the day of sentencing. Failure to pay this special assessment may result in the plea agreement being void;

(8) The Company will be placed on organizational probation for a period of three (3) years from the date of sentencing. The following terms of probation are special terms of probation to which the Company shall be subject in addition to all standard terms of probation:

  (a) The Company agrees that it shall not commit any further criminal violations, including those federal laws and regulations for which primary enforcement has been delegated to state authorities.

  (b) The Company will comply with a Safety and Environmental Compliance Program attached hereto.

  (c) The Company shall notify the probation officer within seventy-two hours of any criminal prosecution against it or knowledge by an executive officer of any referral for potential criminal prosecution to the United States Department of Justice from regulatory authorities.

3

 (d) The Company shall designate an official of the organization to act as the organization's representative and to be the primary contact with the United States Probation Office.

 (e) The Company shall provide written notice to the Government, BSEE, and the U.S. Probation Office ten days prior to any of the following: (i) any change of its corporate name, (ii) any change in the principal business location or mailing address.

 (f) The Company shall provide periodic, written notice to the U.S. Probation Office and BSEE of any purchase, sale or transfer of a controlling interest in any offshore facilities. No change in name, business reorganization, bankruptcy, change in ownership or control of the Company, merger, change in legal status, purchase of assets, or similar action shall alter or diminish the Company's obligations under this plea agreement. The Company further agrees that it will not engage in any business reorganization, transfer of ownership, corporate dissolution, or other business practice, including the sale or transfer of assets, in order to avoid the obligations set forth in this plea agreement.

(9) The parties have entered into this plea agreement under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure with the understanding that the Court will accept or reject the agreement but may not modify its terms. If the District Court modifies any portion of the plea agreement, the Company has the right to withdraw the guilty plea. The government believes that a Rule 11(c)(1)(C) plea agreement is appropriate in this case due to the following:

 (a) The Company's remedial efforts since July 1, 2014, to implement safety and process equipment improvements at its facilities, including the retention of outside experts to assess the water filtration systems on their oil platforms and to upgrade and enhance those systems at a cost exceeding $1,500,000.00;

 (b) The Company's internal investigations and the decision to self report the improper collection process for the samples of the overboard discharged water and the discharge of a pollutant into the Gulf of Mexico.

 (c) The Company's recent creation of a new position, the Vice President of Health, Safety, Environment and Regulatory Compliance, and retention of an independent auditor to review all aspects of the Company's operations to evaluate the Company's safety, environmental and compliance processes, procedures and activities, including on all of the Offshore Facilities.

 (d) The Company's cooperation with both regulatory and prosecuting authorities investigating the offenses;

 (e) The Company's termination of individuals found to be involved in the violations set forth in this Plea Agreement; and

 (f) The Company's acceptance of responsibility for its agents' conduct.

The Company, in exchange for the promise(s) and agreement(s) made by the United States in this plea agreement, knowingly and voluntarily:

(a) Waives and gives up any right to appeal or contest its guilty plea, conviction, sentence, fine, supervised release, and any restitution imposed by any judge under any applicable restitution statute, including but not limited to any right to appeal any rulings on pretrial motions of any kind whatsoever, as well as any aspect of its sentence, including but not limited to any and all rights which arise under Title 18, United States Code, Section 3742 and Title 28, United States Code, Section 1291;

(b) Waives and gives up any right to appeal any order, decision, or judgment arising out of or related to Title 18, United States Code, Section 3582(c)(2) imposed by any judge and further waives and gives up any right to challenge the manner in which its sentence was determined and to challenge any United States Sentencing Guidelines determinations and their application by any judge to the defendant's sentence and judgment, consistent with its rights under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure;

(c) Waives and gives up any right to challenge its sentence collaterally, including but not limited to any and all rights which arise under Title 28, United States Code, Sections 2255 and 2241, writs of coram nobis and audita querela, and any other collateral challenges to its sentence of any kind; and

(d) The defendant specifically does not waive, and retains the right to bring a direct appeal of any sentence imposed in excess of the statutory maximum. The defendant also retains the right to bring a post-conviction challenge if it establishes that ineffective assistance of counsel directly affected the validity of this waiver of appeal and collateral challenge rights or the validity of the guilty plea itself.

The Company further waives any right to seek attorney's fees and/or other litigation expenses under the "Hyde Amendment," Title 18, United States Code, Section 3006A and the Company acknowledges that the Government's position in the instant prosecution was not vexatious, frivolous or in bad faith.

Further, the Company understands that any discussions with the Company's attorney or anyone else regarding sentencing guidelines are merely rough estimates and the Court is not bound by those discussions, except as set forth as above pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. The Company understands that the sentencing guidelines are advisory and are not mandatory for sentencing purposes.

In an effort to resolve this matter in a timely fashion and show good faith, the Company agrees to knowingly, voluntarily, and expressly waive his rights pursuant to Rule 410(a) of the Federal Rules of Evidence upon signing this plea agreement and the factual basis. The Company understands and agrees that in the event the defendant violates the plea agreement, withdraws its decision to plead guilty, its guilty plea is later withdrawn or otherwise set aside, any statements

made by the defendant to law enforcement agents or an attorney for the prosecuting authority during plea discussions, any statements made by the defendant during any court proceeding involving the defendant's plea of guilty, including any factual bases or summaries signed by the defendant, and any leads from such statements, factual bases or summaries, shall be admissible for all purposes against the defendant in any and all criminal proceedings.

The Company agrees that it will continue cooperating with law enforcement authorities submitting to interview whenever and wherever requested.

The stated $4,000,000.00 fine, $200,000.00 community service, and $1,600.00 special assessment represents the total amount to be paid by the Company pursuant to the guilty plea and no other fine/restitution or monetary penalty shall be applicable in this case. The Company agrees that the monetary penalties will be non-dischargeable in any bankruptcy proceeding and that the Company will not seek or cause to be sought a discharge or a finding of dischargeability as to this obligation.

This Plea Agreement shall bind the defendant and any subsidiaries. The SECP shall bind the defendant and its affiliated company Talos Energy Offshore, LLC.

The Company understands that the statements set forth above and the Factual Basis to be filed in the record represent defendant's entire agreement with the Government and that there are no other agreements, letters or notations that will affect this agreement.

Very truly yours,

EMILY K. GREENFIELD
Assistant United States Attorney

By: _William S. Moss III_
William S. Moss III
Representative for Defendant
Energy Resource Technology GOM, LLC

By: _William Michael_
William Michael, Jr.
Attorney for Defendant

By: _Dorothy Taylor_
Dorothy Taylor
Attorney for Defendant

## PURSUANT TO PLEA AGREEMENT
## SAFETY AND ENVIRONMENTAL COMPLIANCE PROGRAM

### United States v. Energy Resource Technology GOM, LLC

The following standards and requirements for a SAFETY AND ENVIRONMENTAL COMPLIANCE PROGRAM (SECP) have been prepared pursuant to the plea agreement between Energy Resource Technology GOM, LLC (hereinafter "ERT" or Defendant) and the United States (hereinafter "Government") filed in the United States District Court for the Eastern District of Louisiana. Compliance with all of the standards and requirements of the SECP is an essential term of the plea agreement.

### A. APPLICABILITY AND PURPOSE

(1) This SECP shall cover and apply to ERT, its subsidiaries, agents and affiliated business entity Talos Energy Offshore LLC, and employees thereof, involved in the operation and management of the Offshore Facilities with federal leases as listed in Appendix A (collectively hereafter "Offshore Facilities").

(2) The obligations under this SECP are in addition to all other applicable statutory and regulatory requirements. Compliance with the terms of this SECP is a specific condition of ERT's probation. The purpose of this SECP is to improve ERT and its affiliated companies' safety and environmental performance offshore through increased inspections, reviews, and audits of the Offshore Facilities; implementation of a comprehensive training program for all personnel engaged in the management and operation of the Offshore Facilities; and development and implementation of operational controls to better manage, detect and prevent safety and environmental violations. ERT will demonstrate compliance with the obligations of this SECP through periodic reports to the United States Probation Office for the Eastern District of Louisiana, Bureau of Safety and Environmental Enforcement, and the United States Attorney's Office for the Eastern District of Louisiana ("Reports"), as described below.

### B. OFFSHORE COMPLIANCE MANAGER AND IMPLEMENTATION PLAN

(1) Within sixty (60) days of entry of the plea agreement, an ERT senior corporate officer will be delegated to serve as the Offshore Compliance Manager (hereinafter "OCM"), subject to approval by the United States Attorney's Office for the Eastern District of Louisiana. The OCM shall report directly to the President of ERT or senior most officer of the company managing and operating the Offshore Facilities. The OCM shall be authorized to take whatever actions are necessary to fully implement the terms of this SECP, including access to all records and personnel subject to the SECP for the purpose of ensuring compliance with the SECP.

(2) Within (60) days of entry of the plea agreement, the OCM shall submit for BSEE approval a detailed plan for implementation of this SECP (Implementation Plan). At a minimum, the Implementation Plan shall include:

    a) a mechanism for tracking ERT's compliance with all applicable requirements of this SECP;

    b) a 'roll-out' communication plan and schedule for educating all employees and contractors of the requirements of this SECP and their obligation to cooperate fully in its implementation;

    c) a system and procedure for offshore managers, employees, and agents/contractors to report to the OCM any violations of this SECP; and

    d) an established disciplinary process for an employee or agent/contractor's failure to report such violations to the OCM or for retaliating against any manager or employee notifying the OCM or BSEE of violations (as described above), up to and including dismissal.

(3) ERT is permitted to take reasonable and proportionate employment action against any such reporting manager or employee who is determined to be involved in violation of company policy.

(4) The OCM shall ensure that audits and surveys are carried out as required in this SECP, that all documents are properly maintained, and that Reports are made on a timely basis to the U.S. Probation Office, United States Attorney's Office for the Eastern District of Louisiana and BSEE. All Reports required to be submitted under this SECP shall be signed by the OCM and shall include the following certification:

> "I certify under penalty of perjury that this document and all attachments were prepared under my direction or supervision, in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information generated by the system, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations."

## C. SAFETY AND ENVIRONMENTAL MANAGEMENT SYSTEMS

(1) ERT and its affiliated companies shall continue to comply with its Safety and Environmental Management Systems ("SEMS") program as described in 30 C.F.R. Part 250, Subpart S, applicable to all employees, managers, superintendents and contractors involved in the operation of the Offshore Facilities. The SEMS program shall include specific provisions under (2) through (10) below to:

(2) Improve the safety culture on the Offshore Facilities, specifically regarding each employee's responsibility to exercise stop work authority and refuse any order from a supervisor, third-party contractor or employee, manager, or superintendent when that order would create an unsafe condition and/or does not fully comply with applicable

OCSLA regulations, permits, or other applicable environmental laws. ERT shall continue to enhance its stop work authority procedures and its system to track all instances in which stop work authority is invoked, and will annually analyze those instances to determine whether safety performance improvements are necessary. The OCM will ensure familiarity with every instance when stop work authority is invoked.

(3) Ensure all workers on the Offshore Facilities are trained on hazard recognition, Job Safety Analysis ("JSA"), Hot Work processes ("Hot Work" is any process that can be a source of ignition when flammable material is present or can be a fire hazard, e.g., welding), blowout preventer testing, following permit and permit modification requirements, and all other issues important to protecting worker safety and the environment, as applicable to each individual's job responsibilities.

(4) Ensure all workers on the Offshore Facilities are trained on the most recent Simultaneous Operations Plan, as applicable to each individual's job responsibilities. This plan includes, for each facility, a check list, a planning form, and a daily simultaneous operations log. The plan also defines roles, accountabilities and requirements to safely conduct simultaneous operations on all Offshore Facilities.

(5) For each Offshore Facility the individual with Ultimate Work Authority (UWA) defined in Title 30, Code of Federal Regulation, 250.1903 and as required by Title 30, Code of Federal Regulation, Section 250.1931 will be identified by name. The individual with UWA shall oversee that all personnel on board the platform know the locations, scope of work, and potential safety hazards involved with the operations scheduled on the Offshore Facility. For individuals working under a supervisor who is not the individual with UWA, the supervisor will be identified by name and will be required to alert the individual with UWA to any material change in his crew's scope of work prior to allowing such work to commence in addition to completing or modifying JSAs and all necessary permits and other safety precautions. Each person on board will be required to sign an acknowledgment upon arrival on the Offshore Facility that he knows who has UWA and he will not deviate from the jobs reviewed during the JSA without written approval by the individual with UWA. To the extent practical, signage will be placed on the Offshore Facility reminding all persons on board to communicate and work safe.

(6) All training records, certifications, and offshore skills verifications shall be retained for three years (or longer if specifically required under existing laws and regulations). The OCM will annually audit the training records of all employees and contractors with regularly assigned rotations to ensure they are properly trained.

(7) Ensure that employees and contractors are aware of the applicable oil spill response plans and emergency procedures, including emergency evacuation procedures. The OCM shall also ensure that Offshore Facility employees are aware of all circumstances under which they are required to report spills to the National Response Center. This includes identifying by name Qualified Individuals as designated in the applicable oil spill response plans and required by Title 33, Code of Federal Regulations, part 154, subpart F. For every Offshore Facility, an individual on the Offshore Facility (the Person-In-Charge, or PIC) must be identified by name for subordinate crew members to

3

report any oil spill or sheen observed on the water.

(8) Ensure that operations on each Offshore Facility are overseen by an Onsite Safety Coordinator (OSC) and subject-matter experts (e.g., drilling supervisor, construction supervisor, etc.) during "major work." "Major work" includes all drilling and workover operations, major construction operations (including all operations involving heavy crane lifts, as that term is defined by the ERT Safe Work Practices Manual) and major well work. Each OSC shall have experience in conducting safe offshore operations, knowledge of applicable safety policies and procedures, and an ability to ensure that the safety policies and procedures are properly executed on the Offshore Facility. The OSC shall not take the place of the individual with UWA and must actively participate in all meetings and work scopes with the individual who has UWA.

(9) Maintain, by either ERT or a third party, an adequate inventory of replacement parts and tools for proper maintenance of safety and pollution prevention equipment.

(10) Ensure that all safety and pollution prevention equipment, including water treatment equipment, is tested on a regular basis, consistent with supplier recommendations and applicable industry testing standards. Such testing shall not be avoided or delayed to limit or eliminate downtime or the costs of downtime. Ensure training on the proper use of chemicals for water treatment such that dispersants, clarifiers, surfactants are not used in violation of the NPDES permits for Offshore Facilities. Identify by name the individual on each Offshore Facility responsible for ensuring adherence to the regulations for the collection of the water samples that determine compliance with the NPDES permits.

## D. INDEPENDENT AUDITS

During the term of probation, a qualified independent Third Party Auditor shall conduct the audits outlined below. Each audit category listed below may be conducted by a different Third Party Auditor. Within 60 days of the plea agreement, ERT shall submit the names and credentials of three candidates for the Third Party Auditor for each audit category to BSEE and the United State Attorney's Office for approval. If none of the candidates are acceptable, ERT will have an additional 30 days to submit alternative candidates.

Once approved, the TPA for each audit category will conduct the following audits and prepare reports which shall be submitted to the United States Probation Office, the United States Attorney's Office, and BSEE:

(1) SEMS Audits: SEMS audits of all the Offshore Facilities subject to this SECP shall be conducted in accordance with regulatory requirements, with certain additional audits as follows: in the first year of probation, 15% of Offshore Facilities will be audited; in the second year of probation, another 15% of Offshore Facilities will be audited; and in the third year of probation, another 25% of Offshore Facilities will be audited. Such audits will include Offshore Facilities with either producing or drilling operations, as appropriate. The audits of Offshore Facilities will include a review of the bridging documents for contractors with regularly assigned rotations on the Offshore Facilities

4

(reflecting the interface between ERT and its affiliated companies' management systems and the management systems of contractors) and independent verification of whether such documents accurately reflect the way that operations are conducted on the Offshore Facilities. For clarification, an audit of the entire ERT SEMS program (including the underlying policies and procedures of the SEMS program) was conducted utilizing a BSEE-approved TPA in 2015 and will be conducted again in 2018, as required by regulations.

(2) <u>Audit of Crane Operations</u>: The TPA shall conduct a review of the current safety procedures for crane operations on all Offshore Facilities which includes: an analysis of the current training and competency requirements for crane operators and others with crane operation-related responsibilities; emergency procedures for responding to crane-related incidents; procedures for routine crane operations, which are currently addressed in the daily JSA performed on the Offshore Facilities; oversight of heavy crane lifts, as that term is defined by the ERT Safe Work Practices Manual; and employee 'stop work' authority. The TPA shall prepare a Report that includes the findings and recommendations for improvement. Within thirty (30) days of receipt of the written crane audit Report, ERT shall provide written notification to BSEE of all actions taken or to be taken to correct any deficiencies identified in the audit.

(3) <u>Audit of Blowout Preventer Testing</u>: The TPA shall conduct a review of policies and procedures regarding the testing of blowout preventers (as required by BSEE regulations). This audit shall assess the adequacy of ERT and its affiliated companies and contractor personnel to maintain all records regarding blowout preventer tests and other pressure tests. To the extent applicable, blowout preventer equipment will be updated with technology that creates an electronic record of testing. When selecting contractors, ERT and its affiliated companies will prioritize hiring contractors that utilize technology that creates an electronic record of the blowout preventer testing. The TPA shall prepare a Report that includes the findings and recommendations for improvement. Within thirty (30) days of receipt of the written blowout preventer testing audit Report, ERT shall provide written notification to BSEE of all actions taken or to be taken to correct any deficiencies identified in the audit.

E. **CONTRACTOR SELECTION, TRAINING, AND OVERSIGHT**

ERT shall be required to

(1) Annually identify all contractors or consultants engaged in the operation or management of the Offshore Facilities with a regularly assigned rotation.

(2) For each contractor or consultant identified under (1), the OCM shall indicate the date and location of any training required to be conducted under this SECP. These records will be maintained throughout the period of probation.

(3) For each contractor or consultant identified under (1), create processes to evaluate the ongoing performance of any contractor performing work on the Offshore Facilities, which must include an annual evaluation of each contracting company's

5

performance to determine whether the contractor is performing operations consistent with all applicable regulatory requirements.

(4) Ensure that ERT personnel and contractor personnel have a means to effectively communicate with one another regarding hazard analysis and risk reduction, as applicable to each individual's job responsibilities. This obligation includes ensuring that there are no communication gaps due to cultural or linguistic differences.

## F. DECOMMISSIONING

(1) Regulatory Requirements: ERT and its affiliated companies have decommissioning responsibilities for the wells, platforms, rigs, pipelines, rights-of-way, and any and all equipment associated with the Offshore Facilities. Pursuant to 30 C.F.R. Part 250, Subpart Q and BSEE Notice to Lessees (NTL) no. 2010-G05, ERT is required to decommission its facilities that are no longer useful for operations or where its lease(s) have terminated.

(2) Inventory and Schedule: To the extent not already provided to BSEE, within sixty (60) days of entry of the plea agreement, ERT shall submit for BSEE approval a complete inventory of all wells, platforms, rigs, pipelines, rights-of-way, and any and all equipment associated with the Offshore Facilities that are subject to BSEE's decommissioning requirements. It shall also propose a schedule for performing the required decommissioning. ERT and its affiliated companies shall comply with the BSEE-approved inventory and schedule for the performance of the decommissioning work. ERT and its affiliated companies shall complete all required decommissioning activities (subject to verification and inspection by BSEE) in accordance with 30 C.F.R. Part 250, Subpart Q.

## G. NEAR MISS REPORTING

(1) Upon activation of the BSEE Near-Miss Reporting System, ERT shall track and anonymously report all 'near miss' events that occur during, or are related to, the exploration, development, and production of oil and natural gas on the OCS to the Bureau of Transportation Statistics (BTS), as a participant in BSEE's Near-Miss Reporting System.

(2) Following entry of the plea agreement, and upon activation of the BSEE Near-Miss Reporting System, ERT shall require each of its contractors to track and report to ERT or anonymously report to BSEE all near-miss events that occur during, or are related to, the exploration, development, and production of oil and natural gas on the OCS to the BTS, as a participant in BSEE's Near-Miss Reporting System.

## H. FINAL REPORT

During the last year of probation, a Final Report that describes the measures taken to comply with each of the requirements of the SECP and all TPA audit recommendations will be prepared by the OCM.

## I. NON-COMPLIANCE

(1) Nothing in this SECP will relieve ERT and its affiliated companies from complying with any applicable lease and/or permit requirements, environmental statutes or regulations. BSEE expressly reserves the right to take any additional enforcement actions, including the imposition of any sanctions or penalties available under those permits, State or Federal statutes and regulations to address non-compliance.

(2) The SECP shall be part of the plea agreement. Compliance with the terms of the SECP is a condition of probation. Failure to comply with any part of this SECP may be a violation of the plea agreement and may be grounds for the revocation or modification of ERT's probation.

## J. BOARD OF DIRECTORS

ERT shall ensure that at least yearly, its Board of Directors or equivalent governing structure receive and review Reports from the OCM and any applicable Report from BSEE concerning the implementation of this SECP, including environmental compliance, safety and training program implementation, and applicable employee training. ERT shall include documentation, such as the meeting agendas, and any internal company Reports demonstrating its compliance with this requirement, in the Reports to the United States and BSEE.

## K. CHANGES IN OWNERSHIP/MANAGEMENT

The parties recognize that during the term of probation, the number and identity of the Offshore Facilities may increase or decrease and any such increase in Offshore Facilities shall be subject to the terms and conditions of this SECP. ERT agrees that it will immediately (but in no event later than twenty-one (21) days following a change) notify the U.S. Probation Office and the U.S. Attorney's Office for the Eastern District of Louisiana, and BSEE of any change in operation or ownership of the Offshore Facilities.

## L. SELF-ENFORCEMENT

ERT further agrees that it will undertake and implement the necessary procedures to ensure diligent compliance with this SECP by all personnel on the Offshore Facilities, as well as by all other employees of ERT and its contractors engaged wholly or partially in operation of the Offshore Facilities on the date of sentencing or at any time during the period of probation.

## M. REVISIONS/MODIFICATIONS

ERT shall comply with the requirements of this SECP, including the dates and time periods. Should ERT be unable to comply with any of the deadlines, ERT shall immediately notify the United States in writing of the reason(s) for non-compliance, and propose a revised timetable. The United States shall then determine as to whether the revised timetable should be accepted.

## N. REPORTS

All reports, documents and correspondence required under this SECP to be sent to the United States shall be sent to the following offices:

a) U.S. Attorney's Office
   Eastern District of Louisiana
   Attn: Emily K. Greenfield
   650 Poydras St., Ste 1600
   New Orleans, LA 70130
   emily.greenfield@usdoj.gov

b) U.S. Probation Department
   Eastern District of Louisiana
   Hale Boggs Federal Building
   500 Poydras Street
   New Orleans, LA 70130

c) Brian Salerno
   Director
   Bureau of Safety and Environmental Enforcement
   1849 C St., NW
   Room 5410
   Washington DC 20240

d) Lars Herbst
   Regional Director, Gulf of Mexico Region
   Bureau of Safety and Environmental Enforcement
   12-1 Elmwood Park Blvd.
   Harahan, LA 70123

Defendant has read this SECP carefully and understands it thoroughly. Defendant enters into this SECP knowingly and voluntarily, and therefore agrees to abide by its terms. By its signature below, the corporate representative agrees that he/she is duly authorized by the corporation's Board of Directors or equivalent governing structure pursuant to the same notarized legal document filed in <u>United States v. ERT</u> certifying that the Defendant is authorized to enter into and comply with all of the provisions of this Plea Agreement.

By: _____  12/10/15
Emily K. Greenfield            Date
Assistant United States Attorney

By: _____  11/30/15
William S. Moss III            Date
Representative for Defendant
Energy Resource Technology GOM, LLC

By: _____  12/10/15
William Michael, Jr.           Date
Attorney for Defendant

By: _____  12/9/15
Dorothy Manning Taylor         Date
Attorney for Defendant

9